UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL JOHNSON,<br><br>Defendant. | No. 1:15-cr-00059-NONE<br><br>ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE<br><br>(Doc. No. 53) |

Pending before the court is defendant Michael Johnson's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). The motion is largely based on defendant's medical condition and the risks allegedly posed to him by the ongoing coronavirus ("COVID-19") outbreak, in addition to certain family circumstances which defendant contends also warrant his release. (Doc. No. 53.) For the reasons explained below, defendant's motion will be denied.

**BACKGROUND**

On October 5, 2015, defendant Johnson entered his plea of guilty to being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) as charged in Count of the indictment in this case. (Doc. Nos. 13 at 2; 15.) Thereafter, it was determined that under the U.S. Sentencing Guidelines the defendant's adjusted offense level was 17 and his criminal history category was VI, resulting in an advisory sentencing guideline range calling for a sentence of

1  imprisonment of 51 to 63 months.  (Doc. No. 17 (Presentence Report) at 14.)  The U.S. Probation
2  Office recommended a low-end guideline sentence of 51 months.  (*Id.*)  Although defendant
3  appeared for sentencing on January 4, 2016, the court instead granted his request to participate in
4  the Delancey Street Program, a vigorous rehabilitation program.  (Doc. Nos. 22, 25.)  On
5  February 9, 2016, however, a pretrial release violation petition was filed because defendant left
6  Delancey Street only about a week after entering the program.  (Doc. No. 27.)  On March 23,
7  2016, defendant admitted to the violation of his release conditions.  (Doc. No. 31.)  Shortly
8  thereafter, on April 18, 2016, the court sentenced defendant to a term of imprisonment of 100
9  months with a 36-month term of supervised release to follow.  (Doc. Nos. 35; 36 at 2–3.)  As of
10 the date of this order, defendant has served approximately 66 months of his 100-month sentence.
11 (Doc. No. 57-1 at 3.)

12 　　　Defendant is currently serving his sentence at the U.S. Bureau of Prisons' ("BOP")
13 Mendota Federal Correctional Institute in Mendota, California ("FCI Mendota").  (Doc. No. 53 at
14 1.)  On July 17, 2020, defendant, appearing pro se, filed the pending motion for compassionate
15 release pursuant to 18 U.S.C. § 3582(c)(1)(A).  (*Id.*)  Although the court referred defendant's
16 motion to the Federal Defender's Office for this district, defendant "indicated he wished to
17 continue pro se" with respect to the motion.  (Doc. Nos. 54; 55 at 2.)  On August 7, 2020, the
18 government filed its opposition to the pending motion, and on August 14, 2020, defendant filed
19 his reply thereto.  (Doc. Nos. 57, 58.)

20 **LEGAL STANDARD**

21 　　　A court generally "may not modify a term of imprisonment once it has been imposed."  18
22 U.S.C. § 3582(c); *see also Dillon v. United States*, 560 U.S. 817, 824 (2010) ("'[A] judgment of
23 conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not
24 be modified by a district court except in limited circumstances.").  Those limited circumstances
25 include compassionate release in extraordinary cases.  *See United States v. Holden*, 452 F. Supp.
26 3d 964, 968 (D. Or. 2020).  Prior to the enactment of the First Step Act of 2018 ("the FSA"),
27 motions for compassionate release could only be filed by the BOP.  18 U.S.C. § 3582(c)(1)(A)
28 (2002).  Under the FSA, however, imprisoned defendants may now bring their own motions for

compassionate release in the district court. 18 U.S.C. § 3582(c)(1)(A) (2018). In this regard, the FSA specifically provides that a court may

> upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf[1] or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable, if it finds that –
>
> (i) extraordinary and compelling reasons warrant such a reduction; or
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission [.]

18 U.S.C. § 3582(c)(1)(A)(i) and (ii).[2]

---

[1] If the BOP denies a defendant's request within 30 days of receipt of such a request, the defendant must appeal that denial to the BOP's "Regional Director within 20 calendar days of the date the Warden signed the response." 28 C.F.R. § 542.15(a). If the Regional Director denies a defendant's administrative appeal, the defendant must appeal again to the BOP's "General Counsel within 30 calendar days of the date the Regional Director signed." *Id.* "Appeal to the General Counsel is the final administrative appeal." *Id.* When the final administrative appeal is resolved, a defendant has "fully exhausted all administrative rights." *See* 18 U.S.C. § 3582(c)(1)(A).

[2] Under 18 U.S.C. § 3624(c)(2), the BOP may release an incarcerated defendant to home confinement "for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months." The Coronavirus Aid, Relief, and Economic Security Act ("the CARES Act"), Pub. L. 116-136, expands the BOP's authority to release incarcerated defendants without judicial intervention. The CARES Act allows the BOP to "lengthen the maximum amount of time" for which a prisoner may be placed in home confinement under § 3624(c)(2) "as the Director determines appropriate," assuming "the Attorney General finds that emergency conditions will materially affect the functioning" of the BOP. CARES Act, Pub. L. 116-136, Div. B, Title II, § 12003(b)(2) (2020). However, the BOP's authority in this regard is limited to "the covered emergency period." *Id.* The BOP's authority expires "30 days after the date on which the national emergency declaration terminates." *Id.* § 12003(a)(2). After the CARES Act was

3

The applicable policy statement with respect to compassionate release in the U.S. Sentencing Guidelines sets out criteria and circumstances describing "extraordinary and compelling reasons." U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 1B1.13[3]; *see also United States v. Gonzalez*, 451 F. Supp. 3d 1194, 1197 (E.D. Wash. 2020) (noting that courts "universally" rely on U.S.S.G. § 1B1.13 to define "extraordinary and compelling reasons," even though that policy statement was issued before Congress passed the FSA and authorized defendants to file compassionate release motions). However, a large and growing number of district courts across the country have concluded that because the Sentencing Commission has not amended the Guidelines since the enactment of the FSA, courts are not limited by the pre-FSA categories described in U.S.S.G. § 1B1.13 in assessing whether extraordinary and compelling circumstances are presented justifying a reduction of sentence under 18 U.S.C. § 3582(c). *See, e.g.*, *United States v. Parker*, __ F. Supp.3d __, 2020 WL 2572525, at *8–9 (C.D. Cal. May 21, 2020) (collecting cases); *United States v. Rodriguez*, 424 F. Supp. 3d 674, 681 (N.D. Cal. 2019).

In the past, when moving for relief under 18 U.S.C. § 3582(c), it was recognized that the defendant bore the initial burden of demonstrating that a sentence reduction was warranted. *See United States v. Sprague*, 135 F.3d 1301, 1306–07 (9th Cir. 1998). Although the Ninth Circuit has not specifically addressed the question of which party bears the burden in the context of a

---

enacted, the Attorney General issued a memo instructing the BOP to "immediately review all inmates who have COVID-19 risk factors" beginning with those who are housed at facilities where "COVID-19 is materially affecting operations." Office of Att'y Gen., *Increasing Use of Home Confinement at Institutions Most Affected by COVID-19* (Apr. 3, 2020). The BOP has acted on the Attorney General's guidance, including one case in which a sentenced prisoner was released to home confinement after serving less than half his sentence from a facility that reported no positive COVID-19 cases at the time of his release. *See* Hannah Albarazi, *Paul Manafort Seeks Prison Release Over COVID-19 Fears*, LAW360 (Apr. 14, 2020), https://www.law360.com/articles/1263706/paul-manafort-seeks-prison-release-over-covid-19-fears (noting that the prisoner's counsel had argued that the CARES Act "broadens the authority" of the BOP to release prisoners to home confinement); Khorri Atkinson, *Paul Manafort Released From Prison Amid COVID-19 Fears*, LAW360 (May 13, 2020), https://www.law360.com/articles/1273090/paul-manafort-released-from-prison-amid-covid-19-fears.

[3] The Sentencing Guidelines also require that to be granted a reduction of sentence under 18 U.S.C. § 3582(c)(1)(A), the defendant must not pose "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2).

motion for compassionate brought pursuant to § 3582(c) as amended by the FSA, district courts that have done so have agreed that the burden remains with the defendant. *See, e.g.*, *United States v. Greenhut*, No. 2:18-cr-00048-CAS, 2020 WL 509385, at *1 (C.D. Cal. Jan. 31, 2020); *United States v. Van Sickle*, No. 18-cr-0250-JLR, 2020 WL 2219496, at *3 (W.D. Wash. May 7, 2020).

## ANALYSIS

As district courts have summarized, in analyzing whether a defendant is entitled to compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), the court must determine whether a defendant has satisfied three requirements:

> First, as a threshold matter, the statute requires defendants to exhaust administrative remedies. 18 U.S.C. § 3582(c)(1)(A). Second, a district court may grant compassionate release only if "extraordinary and compelling reasons warrant such a reduction" and "that such reduction is consistent with applicable policy statements issued by the Sentencing Commission. *Id.* Third, the district court must also consider "the factors set forth in Section 3553(a) to the extent that they are applicable." *Id.*

*Rodriguez*, 424 F. Supp. 3d at 680; *see also United States v. Ramirez-Suarez*, 16-CR-00124-LHK-4, 2020 WL 3869181, at *2 (N.D. Cal. July 9, 2020); *Parker*, 2020 WL 2572525, at *4; *United States v. Trent*, No. 16-cr-00178-CRB-1, 2020 WL 1812242, at *2 (N.D. Cal. Apr. 9, 2020) (noting that as to the third factor, under 18 U.S.C. § 3582(c)(1)(A) release must be "consistent with" the sentencing factors set forth in §3553(a)).

**A.   Administrative Exhaustion**

On May 20, 2020, defendant Johnson submitted a request for compassionate release to the Warden at FCI Mendota. (Doc. No. 53 at 20–22.) On July 17, 2020, the Warden denied defendant's request. (Doc. No. 57-2.) The government concedes that "[m]ore than 30 days have elapsed since receipt of" defendant's administrative request. (Doc. No. 57 at 3.) Therefore, and because the Warden did not respond to defendant's request within 30 days, the court concludes that defendant exhausted his administrative remedies. Accordingly, the court will turn to the merits of defendant's motion for compassionate release.

/////

**B.     Extraordinary and Compelling Reasons**

"Extraordinary and compelling reasons" warranting compassionate release may exist based on a defendant's medical conditions, age and other related factors, family circumstances, or "other reasons." U.S.S.G. § 1B1.13, cmt. n.1 (A)–(D).  Even though the catch-all of "other reasons" was included in the policy statement at a time when only BOP could bring a compassionate release motion, courts have agreed that it may be relied upon by defendants bringing their own motions under the FSA.  *See, e.g.*, *United States v. Kesoyan*, No. 2:15-cr-236-JAM, 2020 WL 2039028, at *3–4 (E.D. Cal. Apr. 28, 2020) (collecting cases).

Thus, the medical condition of a defendant may warrant compassionate release where he or she "is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory)," though "[a] specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required." U.S.S.G. § 1B1.13, cmt. n.1 (A)(i).  Non-exhaustive examples of terminal illnesses that may warrant a compassionate release "include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia." *Id.*  In addition to terminal illnesses, a defendant's debilitating physical or mental condition may warrant compassionate release, including when:

> The defendant is
>
> (I)   suffering from a serious physical or medical condition,
>
> (II)  suffering from a serious functional or cognitive impairment, or
>
> (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

*Id.* at cmt. n.1 (A)(ii).  Where a defendant has moderate medical issues that otherwise might not be sufficient to warrant compassionate release under ordinary circumstances, some courts have concluded that the risks posed by COVID-19 tips the scale in favor of release in particular situations.  *See, e.g.*, *United States v. Rodriguez*, No. 2:03-cr-00271-AB, 2020 WL 1627331, at *10–11 (E.D. Pa. Apr. 1, 2020) ("Without the COVID-19 pandemic—an undeniably

6

extraordinary event—Mr. Rodriguez's health problems, proximity to his release date, and rehabilitation would not present extraordinary and compelling reasons to reduce his sentence. But taken together, they warrant reducing his sentence.").

Compassionate release may also be warranted based on a defendant's age and other related factors. In these situations, "extraordinary and compelling reasons" exist where a "defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." U.S.S.G. § 1B1.13, cmt. n.1(B).[4] In determining a defendant's projected release date, courts may take into account any "good time credits" awarded to the defendant by BOP for "exemplary" behavior in prison as set forth in 18 U.S.C. § 3624(b)(1). *See, e.g.*, *United States v. Burrill*, No. 17-cr-00491-RS, 2020 WL 1846788, at *1 n.1 (N.D. Cal. Apr. 10, 2020).

Finally, compassionate release may also be warranted based on family circumstances. Such situations include those where "[t]he death or incapacitation of the caregiver of the defendant's minor child or minor children," as well as "[t]he incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner." U.S.S.G. § 1B1.13, cmt. n.1(C).

Defendant Johnson argues that extraordinary and compelling reasons warranting his compassionate release exist due to his medical condition and familial circumstances. (Doc. No. 53 at 14.) Defendant's argument with respect to his familial circumstances is unpersuasive. He argues that he is "the only able parent" who can care for his child. (*Id.* 14.) Although somewhat unclear, it appears that defendant's child was living with his mother at the time of defendant's sentencing. (Doc. No. 17 (Presentence Report) at 9–10.) In connection with the pending motion, defendant has submitted a letter from Fresno County's Department of Social Services, Child Welfare Division, stating that defendant's son was removed from his mother's care due to the circumstances in the home, which included methamphetamine use and unsanitary conditions.

---

[4] Here, however, because defendant Johnson is only 41 years old (Doc. No. 17 at 2), his age and age-related factors do not play a role in consideration of his pending motion.

(Doc. No. 53 at 37–38.) Fresno County moved forward with a juvenile dependency action and scheduled a hearing for November 2019, however, defendant has not provided any other details regarding the current custody status of his son. (*Id.* at 37.) In his reply, defendant states that the juvenile dependency hearing was rescheduled for October 16, 2020. (Doc. No. 58 at 2.) Essentially, defendant argues that the "incapacitation" of his child's caregiver (the defendant's ex-wife) as a result of the juvenile dependency investigation presents "extraordinary and compelling reasons" for his compassionate release. In this regard, the court finds persuasive the decision in *United States v. Paul*, No. 3:18-cr-00227, 2020 WL 5807343 (S.D. W.Va. Sept. 25, 2020). There, the defendant argued that "because his children's mother lost parental rights due to abuse and neglect," her "incapacitation" warranted compassionate release. *Id.* at *1. The defendant's children were already in foster care when the defendant in that case moved for compassionate release. *Id.* Nonetheless, the court concluded that the defendant's release was not justified because the defendant failed to demonstrate he would be a "suitable caretaker." *Id.* at *2. The court's conclusion was based on the fact that the defendant failed to show he was "legally entitled to custody of the children" or had a "residence for the children to live in[.]" *Id.*

  Just as in *Paul*, defendant Johnson has failed to establish that he is likely to be found a "suitable caretaker" for his child by the governing authorities. *See id.* Much of defendant's support for his contention that if released "he will be able to care for his son" comes from his own conclusory assertions that are unsupported by any declarations or other form of documentary evidence. (*See* Doc. No. 53 at 14, 16–17.) For example, defendant states that if released he will live with his father and will work at his aunt's trucking company—both of whom live in Arizona. (*Id.* at 16–17.) However, defendant has not submitted a declaration from either his father or aunt corroborating these representations. Second, defendant does not explain who will care for his child while he is at work if he gains employment upon release. Third, although defendant was sent a letter from Fresno County regarding his child's dependency hearing, it is unclear whether defendant has any custodial rights with respect to his child or whether, if released, those rights would be recognized and he would actually be awarded custody of his son. (*See* Doc. No. 53 at 37 ("The Court will be made aware of your incarceration and an attorney will be assigned to you

on your behalf.").) Finally, defendant has a long history of substance abuse issues and, as noted above, he failed to complete the Delancey Street program that the sentencing court permitted him to attend when he walked out of the facility after only one week. (Doc. Nos. 17 (Presentence Report) at 10; 27 at 1.) Whether defendant Johnson is likely to be found a "suitable caretaker" for his minor child is unclear. *See Paul*, 2020 WL 5807343, at *2. Based on the current record before the court, defendant has not established that his family circumstances create "extraordinary and compelling reasons" justifying his compassionate release.[5]

Second, defendant argues that his medical conditions warrant compassionate release. Defendant is currently 41 years old. (*See* Doc. No. 17 (Presentence Report) at 2.) Thus, to qualify for compassionate release on the basis of his medical condition, defendant must demonstrate that he is suffering from some serious medical condition "that substantially diminishes [his] ability . . . to provide self-care" in FCI Mendota and the medical condition is one "from which he . . . is not expected to recover." U.S.S.G. § 1B1.13, cmt. n.1 (A)(ii). Defendant argues that three separate medical conditions, combined with the risks posed to him by COVID-19, warrant his release. More specifically, defendant argues that he suffers from trace pretibial edema, palpitations, and an unspecified disorder of the circulatory system. (Doc. No. 53 at 13.) He also argues that he has uncontrolled heart disease, blood vessel disease, and kidney disfunction and failure, shortness of breath, and chest pain and pressure. (*Id.* at 13–14.) According to defendant's BOP medical records, he currently suffers from two separate unspecified disorders of the circulatory system: trace pretibial edema and palpitations. (*Id.* at 24.) The first condition pertains to defendant's "right leg." (*Id.* at 26.) The latter condition, palpitations, relates to defendant's heart. In April 2020, defendant notified the BOP medical staff

---

[5] If defendant Johnson elects to again seek compassionate release administratively and then, if appropriate, file another motion for compassionate release with this court, the court encourages defendant to avail himself of legal representation—something he expressly rejected in connection with the pending motion. As he himself has acknowledges, "[m]any documents for added proof is unavailable to defendant in such a short notice." (Doc. No. 58 at 2.) Moreover, this court has noted above the lack of evidence presented in support of defendant's contention that his familial circumstances create "extraordinary and compelling reasons" justifying his compassionate release. Were counsel appointed in the future, that counsel could likely assist defendant in gathering and presenting such evidence to the court.

that he was having trouble breathing, leading to the conducting of an electrocardiogram (commonly known as an EKG) with "no acute ischemic change" being noted and it being observed that defendant "appear[ed] anxious" at that time.  (*Id.*)

Defendant is not at higher risk of becoming severely ill were he to contract COVID-19 based on any of his medical conditions.  *See Coronavirus Disease 2019 (COVID-19): People Who Are at Increased Risk for Severe Illness*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-increased-risk.html (last visited Oct. 7, 2020).  As a result, defendant cannot be said to suffer from any "serious" medical condition for the purposes of compassionate release and his motion must be denied on this basis as well.  *See* U.S.S.G. § 1B1.13, cmt. n.1 (A)(ii).

Therefore, in this case, the court does not find extraordinary and compelling reasons justifying compassionate release.

### C.     Consistency With the § 3553(a) Factors

Because the pending motion fails to establish extraordinary and compelling reasons justifying compassionate release in this case, the court need not address whether any reduction in defendant's sentence would be consistent with consideration of the sentencing factors set forth at 18 U.S.C. § 3553(a).  Nonetheless, the court notes that it recognizes defendant's advisory sentencing guideline range called for a term of imprisonment of 51 to 63 months[6] and that, after walking away after a brief stay from the opportunity provided to him at the Delancey Street program, he was sentenced to a term of imprisonment that was 37 months above the high end of the guidelines.

### CONCLUSION

For the reasons explained above, defendant's motion for compassionate release (Doc. No. 53) is denied.

IT IS SO ORDERED.

Dated:  **October 15, 2020**                              /s/ Dale A. Drozd
                                                          UNITED STATES DISTRICT JUDGE

---

[6] It appears defendant Johnson has already served approximately 66 months in custody.